# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1001 | **DATE** | 8/25/2004 |
| **CASE TITLE** | | Papst vs. Sunonwealth | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Sunon's motion for summary judgment on Count I is granted. The Court declines to exercise supplemental jurisdiction over Count II. All pending motions are denied as moot. Status hearing set for 9/7/04 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 2 7 2004 | 162 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | JXM | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notices | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAPST LICENSING GmbH AND CO. KG, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SUNONWEALTH ELECTRIC MACHINE IND. ) <br> CO., LTD., SUNON INC., AND BEYOND ) <br> COMPONENTS OF ILLINOIS, INC., ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> SUNON INC., ) <br> ) <br> Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PAPST LICENSING GmbH AND CO. KG, ) <br> ) <br> Counter-Defendant. ) | No. 03 C 1001 <br><br> **DOCKETED** <br> AUG 27 2004 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Papst Licensing GmbH and Co. KG ("Papst"), a German company, filed a two count complaint against Defendants Sunon Inc., a California corporation, and Beyond Components of Illinois, Inc., an Illinois corporation (collectively "Sunon").[1] In Count I, Papst accuses Sunon of infringing United States Patent No. 4,734,015 ("the '015 patent") in violation of 35 U.S.C. § 271. In Count II, Papst accuses Sunon Taiwan of breaching a patent license

---

[1] The complaint also names as a defendant Sunonwealth Electric Machine Co., Ltd. ("Sunon Taiwan"), a Taiwanese company, but Papst has not yet served Sunon Taiwan.



agreement. On March 19, 2004, the Court issued an order construing Claim 29 of the '015 patent, the only disputed claim. *Paspt Licensing GmbH and Co., KG. v. Sunonwealth Elec. Mach. Ind. Co., Ltd.*, No. 03 C 1001, 2004 WL 557385 (Mar. 19, 2004) ("*Markman* Order"). Sunon thereafter moved for summary judgment of noninfringement as to Claim 29. For the reasons stated herein, summary judgment is granted as to Count I, and Count II is dismissed for lack of jurisdiction.

## LEGAL STANDARDS

I.  **Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## II. Patent Infringement

A determination of patent infringement is a two-step process in which the Court first construes the claims. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). The factfinder then compares the properly construed claims to the accused device to determine, as a question of fact, whether all of the claim limitations are present in the accused device. *Id.* at 1454; *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004).

Because the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial burden either by providing evidence that would preclude a finding of infringement, or by showing that the evidence fails to establish a material issue of fact essential to the patentee's case. *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999). Summary judgment of noninfringement may be granted if, after viewing the alleged facts in the light most favorable to the patentee and drawing all justifiable inferences in the patentee's favor, there is no genuine issue as to whether the patent claims encompass the accused device. *Novartis Corp. v. Ben Venue Labs. Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

"To prove infringement, the patentee must show that the accused device meets each claim limitation." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). This is known as the "all elements rule." *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S. Ct. 1040 (1997); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935-36 (Fed. Cir. 1987) (*en banc*). Summary judgment of noninfringement is proper where there is no genuine issue as to whether the accused device lacks

a single claim element or its equivalent. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

### A. Literal Infringement

"An accused device literally infringes a claim if every limitation recited in the claim appears in the accused device, *i.e.*, the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000), quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996).

### B. Infringement Under The Doctrine of Equivalents

An accused device infringes a claim under the doctrine of equivalents if it performs substantially the same overall function, in substantially the same way, to produce substantially the same overall result as the claimed invention. *Warner-Jenkinson*, 520 U.S. at 40; *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856 (1950). The doctrine of prosecution history estoppel may bar a patentee from asserting the doctrine of equivalents to recapture subject matter that the patentee gave up during prosecution. *Warner-Jenkinson*, 520 U.S. at 30.

### BACKGROUND

The Court set forth a detailed description of the axial-flow fan that is the subject of the '015 patent in the *Markman* Order. Claim 29 recites:

An axial-flow fan comprising
    [1] *a drive motor means,*
    [2] *a scroll plate means surrounding an impeller means having a hub,*
    [3] an inner contour of said scroll plate means having a *cylindrical configuration* in a vicinity of an axial median plane of the fan and extending towards an inlet side of the fan and

4

[4] with an outlet side of the scroll plate means formed into a *polygonal profile* circumscribing an impeller diameter and

[5] accompanied by formation of *corner areas*, and

[6] a central, coaxial core means formed by the drive motor means, the impeller hub and a mounting flange for the drive motor means,

[7] said core means having an *annular surface reduced in diameter towards the inlet side*,

[8] the annular surface having an axial length *extending for a given distance* along the length of the hub, and

[9] with respect to the axial median plane, the scroll plate means being *asymmetrical in the corner areas* and

[10] being *cylindrical* over a longer distance from the axial medial plane to the inlet side than to the outlet side and

[11] wherein the impeller means has an *outside edge* which extends from an area adjacent the inlet side of the fan into the corner areas.

'015 patent, col. 9, ll. 19-39 (emphases added).[2] The Court's claim construction is set forth in detail in the *Markman* Order and need not be repeated here.

## ANALYSIS

To survive summary judgment, Papst must establish a genuine issue as to whether the Accused Fans meet all eleven claim limitations of Claim 29. *Lockheed Martin*, 324 F.3d at 1321. Sunon argues that the Accused Fans do not meet claim limitations 3-5, 10, and 11. Regarding limitation 4, the Court agrees that no reasonable jury could find that the Accused Fans meet the "polygonal profile" requirement either literally or under the doctrine of equivalents.

### I. The Accused Fans

Before determining whether there is a genuine issue as to infringement, the Court must determine which Sunon fans are at issue. Papst accuses twelve different Sunon AC fans of

---

[2] The Court numbered the claim limitations for ease of reference.

infringement[3] and seeks further discovery as to certain of those fans. Sunon contends that the following two models are representative of all of the accused fans: (1) model number SP101A, part number 1123HST (the "SP Accused Fans") and (2) model number SF11592A, part number 1092HSL (the "SF Accused Fans").

## A. The Magistrate's Ruling Regarding The SF Accused Fans

The parties have engaged in numerous discovery disputes throughout the course of this litigation.[4] On January 29, 2004, Papst filed a Fourth Motion to Compel in which it sought, *inter alia*, production drawings prepared by Sunon Taiwan. Sunon argued that it could not produce the documents because it lacked control over Sunon Taiwan. On February 4, 2004, Magistrate Judge Bobrick denied Papst's motion to compel and "admonishe[d] the parties that fact discovery closed on January 30, 2004." (R. 113-1, Minute Order.) Magistrate Judge Bobrick further ruled that "no further fact discovery activity is allowed." On February 26, 2004, Papst filed in this Court an objection to the Magistrate's ruling.

Papst argues that it needs the production drawings in order to oppose summary judgment because the production drawings demonstrate that particular SF Accused Fans meet claim limitation 11.[5] Papst incorrectly argues that "[t]his structural difference [regarding Limitation

---

[3] Specifically, Papst accuses the following Sunon fans of infringement: model number DP200A (part number 2123XBT), DP200A (part number 2123XST), DP203A (part number 2123 LST), SP100A (part number 1123XSL), SP100A (part number 1123XST), SP101A (part number 1123HBL), SP101A (part number 1123HBT), SP102A (part number 1123MST), SP103A (part number 1123LBT), and SP103A (part number 1123LST). (R. 147-1, Pl.'s Mem. in Opp. to Summ. J. at 1 n.3.)

[4] On October 16, 2003, the Court referred the parties to Magistrate Judge Bobrick to resolve the discovery disputes. (R. 68-1, Minute Order.)

[5] The Court construed claim limitation 11 to require that the radial outer edge of the fan blades extend into the corner areas of the fan. Papst "expects that, due to manufacturing tolerances of

6

11] by itself would be sufficient to preclude grant of the requested summary judgment as to all accused fans." (R. 147-1 at 1.)

Whether the Accused Fans meet claim limitation 11, however, is irrelevant because the Accused Fans do not meet claim limitation 4. Thus, even assuming that the Accused Fans meet claim limitation 11, Papst cannot establish infringement. Under the all elements rule, Papst's failure to establish infringement as to one of the eleven claim limitations is fatal to Papst's infringement claim. *Deering*, 347 F.3d at 1324. Accordingly, Papst is not entitled to the Sunon Taiwan production drawings, and Papst's motion objecting to the magistrate's ruling is denied.

### B. Pre-1999 Fans

The parties dispute whether Sunon's summary judgment motion properly encompasses fans that Sunon's predecessor or Sunon's parent sold before 1999 (the "pre-1999 fans"). Sunon contends that summary judgment of noninfringement is warranted against the pre-1999 fans for the same reasons summary judgment is warranted against the post-1999 fans (*i.e.*, the fans do not meet all of the claim limitations) because there is no material difference between the pre- and post-1999 fans. Papst argues that there is a genuine issue as to whether the pre- and post- 1999 fans are materially different because "Sunon chose not to submit a competent declaration that all accused products have the identical construction as the SP and SF Accused Products." (R. 147-1,

---

the relevant component parts, the position of the outside edge of the fan blades with respect to the 'corner areas' varies across various production runs of the SF fans so that many SF fans are infringing while others are not." (R. 147-1, Pl.'s Mem. in Opp. to Summ. J. at 2-3.) To support this assertion, Papst identifies two SF fans (Exhibit A and Exhibit 28) that have the same model and part numbers but nonetheless appear to differ structurally with respect to claim limitation 11. Papst further appears to argue that there are structural differences between particular SP Accused Fans with respect to the "cylindrical configuration" requirement of claim limitations 3 and 10. (R. 147-1, Pl.'s Mem. in Opp. to Summ. J. at 17.)

(Pl.'s Mem. in Opp. to Summ. J. at 18.)

To survive summary judgment, Papst must establish a genuine issue as to whether the accused devices meet every limitation of the claim. *Lockheed Martin*, 324 F.3d at 1321. Sunon met its initial burden by proffering evidence that the pre-1999 fans do not infringe Claim 29. *See Vivid Tech.*, 200 F.3d 795 at 807. Specifically, Sunon put forth evidence that the pre-1999 fans are not materially different from the post-1999 fans, such that Sunon's noninfringement arguments with respect to the post-1999 fans apply with equal force to the pre-1999 fans. In its sur-reply, Papst failed to address Sunon's evidence and failed to proffer any evidence as to the structure of the pre-1999 fans. Without any evidence of the structure of the accused devices sold before 1999, the Court is left with nothing but a bare allegation of infringement. This is insufficient to survive summary judgment. *Lopes v. Hardware Distributors, Ltd.*, No. 02-1146, 2003 WL 1949581 (Fed. Cir. Apr. 23, 2001) ("Without any evidence of the structure of the accused [device] sold before May 12, 1995, [the patentee] leaves the court to surmise what the structural configuration of the accused product was before May 12, 1995 . . . . Thus, we conclude that summary judgment of noninfringement pre-May 12, 1995 products was appropriate.").

Papst makes no attempt to meet its burden of showing how the pre-1999 fans meet the limitations of Claim 29. Accordingly, summary judgment of noninfringement is granted as to the pre-1999 fans for the same reasons addressed below regarding the post-1999 fans.

## II. The Accused Fans Do Not Infringe The '015 Patent Because They Do Not Meet The "Polygonal Profile" Limitation Either Literally Or Under The Doctrine Of Equivalents

Under the all elements rule, an accused device must contain every claimed element of the

8

invention or the equivalent of every claimed element. *See Warner-Jenkinson*, 520 U.S. at 29. Thus, summary judgment as to literal infringement is proper if there is no genuine issue as to whether the accused device lacks a single required element. *Lockheed Martin*, 324 F.3d at 1321. In this case, summary judgment is proper because there is no genuine issue as to whether the Accused Fans meet claim limitation 4, either literally or under the doctrine of equivalents.

Claim limitation 4 requires "an outlet side of the scroll plate means formed into a polygonal profile circumscribing an impeller diameter." The Court construed the "polygonal profile" limitation to mean that the outlet side of the inner contour of the fan housing must be non-circular in shape due to facets formed by the corner areas of the fan housing on the outlet side. The Court further noted that a "polygon" is "a closed figure consisting of straight lines joined end to end," citing *Webster's Third New International Dictionary*. (*Markman* Order at 14 n.10.)

### A. Literal Infringement

Papst contends that the Accused Fans literally infringe Claim 29 because the Accused Fans have a non-circular profile at the inner contour of the outlet side. Sunon argues that Papst mischaracterizes the *Markman* Order by ignoring the undisputed definition of "polygon," and further argues that under the correct claim construction, the Accused Fans do not literally infringe Claim 29 because they do not have a profile that consists of a closed-figure consisting of straight lines. The Court agrees with Sunon.

#### 1. The *Markman* Order

The parties did not dispute the meaning of the word "polygonal" in their claim construction briefs. Instead, both parties focused on whether the "polygonal profile" limitation

referred to the overall shape of the fan or the shape of the inner contour at the outlet side.

In resolving this dispute, the Court rejected Papst's position that the term "polygonal profile" referred to the overall shape of the fan. The Court ruled that the word "polygonal" referred to the inner contour of the fan and adopted Sunon's proposed construction: "the outlet side of the inner contour of the fan housing is non-circular in shape due to facets formed by the corner areas of the fan housing on the outlet side." (*Markman* Order at 14.) The Court further made clear that the undisputed term "polygon" means "a closed figure consisting of straight lines joined end to end." (*Markman* Order at 14 n.10.) The Court explicitly ruled that, while the claim language did not require a polygon of a particular size or shape, it nonetheless required a "polygon." (*Markman* Order at 14) (stating that the claim requires that "the inner contour have a 'polygonal profile,' which can mean *any* polygonal shape.").

Papst improperly ignores the Court's definition of "polygon" and instead seizes on the term "non-circular." This is inconsistent with the *Markman* Order. The definition of "polygon" is clearly part of the claim construction ruling which Papst may not disregard.

### 2. The Accused Fans

Papst contends that the Accused Fans have a profile on the outlet side that is not perfectly circular but rather has four tiny transition areas or "facets" at the middle of each of the straight sides of the box fan. (The shape resembles a circle that is slightly flattened where the circular profile meets the four edges of the box fan.) Papst argues that these flattened areas of the circle cause the inner contour of the fan housing to have a non-circular profile that meets the "polygonal profile" limitation. (R. 147-1, Pl.'s Mem. in Opp. to Summ. J. at 9.) Sunon disputes that the Accused Fans have straight-lined "facets" on the outlet side, and notes that it is

10

undisputed that the profile of the outlet side is substantially circular in all areas except for the allegedly slightly flattened areas.

On summary judgment, the Court accepts Papst's characterization of the shape of the inner contour of the outlet side of the Accused Fans as having slightly flattened areas where the circular profile meets the four edges of the box fan. Even accepting Papst's characterization, however, the Accused Fans do not literally infringe Claim 29 because they do not have a profile that is "polygonal," *i.e.*, consisting of "a closed figure consisting of straight lines joined end to end." It is undisputed that the Accused Fans have an outlet side that is substantially circular but for the slightly flattened transition areas that Papst contends are present along the four edges of the Accused Fans. It is therefore undisputed that the Accused Fans lack profiles on the outlet side that are in the shape of "a closed figure consisting of straight lines joined end to end." The Accused Fans do not literally infringe.

### B.  Doctrine of Equivalents

Sunon argues that the doctrine of argument estoppel bars Papst from claiming that the substantially circular profile of the outlet side of the Accused Fans is equivalent to the "polygonal profile" of claim limitation 4.[6] The Court agrees.

Prosecution history estoppel bars a patentee from asserting as an equivalent subject matter that he surrendered during prosecution of the patent application. *Allen Eng'g Corp. v.*

---

[6] Papst did not respond to Sunon's estoppel argument. This is improper. Papst must contest the legal authority advanced by Sunon in order to sufficiently rebut Sunon's arguments. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990).

*Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002); *American Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1445-46 (Fed. Cir. 1997). Argument-based estoppel may arise where a patentee makes arguments during prosecution in order to secure the allowance of a claim. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) (holding that the scope of coverage of the claims may change if a patentee has "relinquished [a] potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference"); *Allen Eng'g*, 299 F.3d at 1350. Whether prosecution history estoppel applies is a matter of law. *Bai v. L&L Wings Inc.*, 160 F.3d 1350, 1354 (Fed. Cir. 1998).

During prosecution, Papst distinguished its claimed invention from prior art fans with substantially circular profiles on the outlet side. In response to an obviousness rejection of Claim 1[7] in view of United States Patent No. 4,225,285 to Sturm in combination with United States Patent No. 4,373,861 to Papst et. al, Papst[8] argued that the Sturm fan did not have a "polygonal profile." In traversing the rejection, Papst argued that

> Sturm's fan does not have substantially polygonal inlets and outlets with a substantially circular mid section axially in the flow direction. Sturm has

---

[7] This portion of the prosecution history relates to Claim 1. Claim 29 was introduced later during prosecution by way of amendment. When the applicant introduced Claim 29, he stated that Claim 29 is identical to Claim 1 except for a change in wording in the last line. The applicant's arguments made to overcome rejections with respect to Claim 1 are therefore binding as to the identical "polygonal profile" limitation of Claim 29, even though Claim 29 was not itself amended. *Intermatic Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1366-67 (Fed. Cir. 2001); *Builder's Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 260 (Fed. Cir. 1985); *see also Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1584 (Fed. Cir. 1995) ("Once an argument is made regarding a claim term so as to create an estoppel, the estoppel will apply to that term in other claims.").

[8] As noted in the Court's *Markman* Order, the Court adopts the parties' convention and refers to the arguments as having been made by Papst, when in reality the applicant Wrobel made these arguments.

12

> *substantially circular cross sections* of his outer casing *throughout its entire length*. Although there is a mid section of constant cross-section, *the inlet and outlet portions are still circular. . . . Sturm does not have a scroll plate means . . . extending towards the inlet side and the outlet side in a polygonal configuration . . . .*

(Oct. 9, 1985 Amendment at 2-3 (emphasis added).)

Sunon argues that Papst thereby clearly and unmistakably surrendered the very subject matter that it now seeks to recapture under the doctrine of equivalents. Papst convinced the Examiner to allow Claim 29 by arguing that Claim 29 did not encompass a fan with a "substantially circular cross section" at the outlet side. It is undisputed that the Accused Fans have a profile that is substantially (if not completely) circular at the outlet side. Prosecution history estoppel therefore bars Papst from reclaiming the subject matter that it disavowed during prosecution.

Accordingly, there is no genuine issue as to whether the Accused Fans meet claim limitation 4. Because Papst cannot establish that the Accused Fans meet all of the limitations of Claim 29, summary judgment of noninfringement is granted.

### III. Count II Is Dismissed

#### A. The Court Lacks Jurisdiction Over Count II

In Count II, Papst accuses Sunon Taiwan of breaching the patent license agreement. (R. 1-1, Compl. ¶¶ 12-16.) The Court originally had jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a) because Count I presented a federal question. Because Count I no longer remains in the case, the Court must determine whether, in its discretion, to retain jurisdiction over Count II pursuant to 28 U.S.C. § 1367(c). The Court declines to do so.

There is no independent basis for the Court to exercise jurisdiction over Count II. Count

13

II presents a question of state law, and the parties are not diverse under 28 U.S.C. § 1332(a) because the parties are both foreign corporations (Papst is a German company and Sunon Taiwan is a Taiwanese company). A foreign company cannot sue another foreign company in federal court where there are no domestic parties in the dispute. 28 U.S.C. § 1332(a); *Bank of Nova Scotia v. S & W Berisford, Inc.*, 753 F. Supp. 237, 238 (N.D. Ill. 1990); *ITT v. Vencap*, 519 F.2d 1001, 1015 (2nd Cir. 1975) ("Diversity jurisdiction under 28 U.S.C. § 1332 is defeated by the presence of aliens both as plaintiffs and as defendants.").

The Court may in its discretion retain supplemental jurisdiction even though it has dismissed the non-diverse parties' federal claim. 28 U.S.C. § 1367(c). Section 1367(c) allows a district court to decline to exercise supplemental jurisdiction under the following circumstances:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In this case, the issues involving the patent license are complex and the Court has dismissed all claims over which it had original jurisdiction. Accordingly, the Court declines to retain supplemental jurisdiction over the remaining non-federal claim.

### B. Papst Failed To Timely Serve Sunon Taiwan

Moreover, even if the Court decided to exercise its supplemental jurisdiction over Count II, Plaintiff has failed to timely serve Sunon Taiwan, the only defendant named in Count II. Federal Rule of Civil Procedure 4 governs service of process. Although the 120 day limitation of Rule 4(m) does not apply to the service of process on a corporation in a foreign country, "this

does not mean that plaintiffs have unlimited time to serve." *Travers Tool Co. v. Southern Overseas Express Line, Inc.*, No. 98 CV 8464(RO), 2000 WL 194781, at *1 (S.D.N.Y. Feb. 17, 2000); *see also In re Crysen/ Montenay Energy Co.*, 166 B.R. 546, 553 (S.D.N.Y. 1994) ("The mere fact that Congress exempted foreign service from the 120-day requirement[] does not give litigants an unlimited time in which to complete service."). "Rather, where service is in a foreign country, the Court uses a flexible due diligence standard to determine whether service of process was timely." *Standard Commercial Tobacco Co. v. Mediterranean Shipping Co.*, No. 94 CIV 7040, 1995 WL 753901, at *1 (S.D.N.Y. Dec. 19, 1995). The "flexible due diligence" standard is measured by the reasonableness of the plaintiff's effort as well as the prejudice to the defendant from any delay. *James v. Rutil (S.R.L.)*, No. IP 95-530-C-B/S, 1997 WL 151174 (S.D. In. Mar. 14, 1997); *People's Ins. Co. of China v. M.V. Amalia Del Bene*, No. 96-1088, 1996 WL 337256 (E.D. La. June 18, 1996).

In this case, Papst has not exercised reasonable diligence in attempting to serve Sunon Taiwan. Papst filed its complaint on February 11, 2003. (R. 1-1, Compl.) On April 25, 2003, Papst represented to the Court that its "process server has forwarded the appropriate documents, including a fully executed Letters Rogatory from the Court, to the appropriate Taiwanese governmental authorities. According to Papst Licensing's process server who specializes in foreign service, completion of service on Sunon Taiwan by the appropriate Taiwanese governmental authorities can take up to several months, if not longer, to complete." (R. 13-1, Proposed Alternative Scheduling Plans at 1.) As of the date of this order — over one and a half years after Papst filed its complaint — Papst still has not served Sunon Taiwan. Although Papst promptly initiated the complicated procedure required to serve process in Taiwan, Papst has not

explained how the subsequent 16-month delay is reasonable. *James*, 1997 WL 151174 at *5.

## CONCLUSION

There is no genuine issue as to whether the Accused Fans literally infringe the "polygonal profile" limitation as construed by the Court in the *Markman* Order, and there is no genuine issue as to whether prosecution history bars Papst from asserting the doctrine of equivalents as to the "polygonal profile" limitation. Accordingly, summary judgment is granted in favor of Sunon as to Count I. The Court declines to retain supplemental jurisdiction over Count II.

Dated: August 25, 2004        ENTERED

_____
AMY J. ST. EVE
United States District Court Judge